AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

District of South Carolina ▾

| | |
|---|---|
| United States of America<br>v.<br><br>DEJUAN RAVENEL<br><br><br>_____<br>*Defendant(s)* | )<br>)<br>)    Case No.    2:26-mj-00042<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of    July 4, 2026-July 7, 2026    in the county of    Charleston    in the
Judicial    District of    South Carolian    , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18, United States Code,<br>Section 922(g)(1) | Felon in Possession of Ammunition |

This criminal complaint is based on these facts:

See attached Affidavit of FBI TFO David D. Rivera

☑ Continued on the attached sheet.

_____
*Complainant's signature*

David D. Rivera, FBI TFO
*Printed name and title*

Sworn to me via telephone or other reliable electronic means
and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d).

Date:    July 21, 2026

_____
*Judge's signature*

City and state:    Charleston, South Carolina        Molly H. Cherry, United States Magistrate Judge
*Printed name and title*

| Print | Save As... | Attach | Reset |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

UNITED STATES OF AMERICA

v.

**DEJUAN RAVENEL**,

Defendant.

Criminal No.: 2:26-mj-00042

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A CRIMINAL COMPLAINT

I, David D. Rivera, do hereby depose and state:

## AGENT BACKGROUND

1. I am a Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI) and have been assigned to the FBI since August of 2020. I have been a sworn law enforcement officer since March of 2017. I was first hired by North Charleston Police Department (NCPD) and assigned to the patrol division and patrolled the streets of North Charleston in uniform and a marked police car. In May of 2018, I was assigned to the Gang Intervention Team of the NCPD. As a Gang Detective my duties included monitoring and investigating gang-related criminal activity that occurred in and around North Charleston. In March 2024, I was hired with the South Carolina Law Enforcement Division (SLED) and assigned to our Gang Intelligence Unit (GIU). Since August of 2020, I have been assigned to the FBI Lowcountry Violent Crime Task Force (LCVCTF)[1] and my duties and responsibilities are to investigate violent gangs operating inside or connected to the greater Charleston area. As such, I am an "investigative or law enforcement

[1] The LCVCTF is an FBI led joint task force consisting of the FBI, South Carolina State Law Enforcement Division (SLED), the North Charleston Police Department (NCPD), the Charleston City Police Department (CPD), the Charleston County Sheriff's Office (CCSO), the Berkeley County Sheriff's Office (BCSO) and the Mount Pleasant Police Department (MPPD).

officer" within the meaning of Title 18, United States Code, Section 2510(7), and empowered by federal law to investigate and make arrests for offenses enumerated in Section 2518 of Title 18 of the United States Code. As a TFO, I have been trained in various aspects of law enforcement, particularly in gang investigation techniques. As a result of my law enforcement experience, I have participated in hundreds of gang-related investigations and prosecutions. In connection with those investigations, I have conducted surveillance, executed searches, and secured relevant information using numerous other investigative techniques.

**PURPOSE OF AFFIDAVIT**

2.      This affidavit is made in support of a criminal complaint against **DEJUAN RAVENEL**, charging him with violating Title 18, United States Code, Section 922(g) (Felon in Possession of Ammunition).

3.      I make this Affidavit based upon personal knowledge derived from my participation in this investigation and/or information that I have learned from discussions with other law enforcement officers; from physical surveillance conducted by federal agents and/or other law enforcement officers; my review of law enforcement reports and video evidence, and from my experience and training. The details and information stated herein are a compilation of facts and events investigated by me and other law enforcement officers, who investigated and confirmed their veracity or oversaw their development.

4.      Unless otherwise noted, wherever in this Affidavit I assert that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom I have spoken.  Such statements are stated in substance, unless otherwise indicated.  Wherever in this Affidavit I state a belief, such belief is based upon my training and experience and the information obtained through this investigation.

2

5. Since this Affidavit is being submitted for the limited purpose of showing sufficient probable cause for the requested complaint, I have not included each and every fact about this investigation. I have only set forth those facts which I believe are necessary to establish that there is probable cause to believe that the offense listed herein has been violated.

### FACTS IN SUPPORT OF PROBABLE CAUSE

6. On July 4, 2026, uniformed officers with the North Charleston Police Department (NCPD) responded to a report of a large public disturbance in the area of Spruill Avenue near North Carolina Avenue in North Charleston, South Carolina. All responding officers were acting within the lawful scope of their official duties and for a legitimate law enforcement purpose.

7. While NCPD officers and officers from assisting law enforcement agencies were attempting to disperse the crowd and restore order, several individuals became combative and physically assaulted responding officers. NCPD Officer Abigail Angelucci was among the officers physically assaulted during the incident.

8. During the physical assault of Officer Angelucci, her department-issued taser and two firearm magazines, each containing thirteen (13) rounds of .45 caliber ammunition, became dislodged and unsecured from her duty holster. Following the assault, law enforcement was unable to locate Officer Angelucci's taser or loaded firearm magazines.

9. As part of the investigation into the events that took place on July 4, 2026, including the physical assault of Officer Angelucci, NCPD investigators reviewed body-worn camera (BWC) footage captured by responding officers that night. BWC footage recorded by NCPD Officer Jessica Decell shows a black male wearing a black Nike headband, black pants, and a grey shirt removing Officer Angelucci's taser and the two loaded firearm magazines from the area and leaving the area with those items.

3

10.     Investigators also obtained and reviewed surveillance footage from City of North Charleston Verkada cameras located in the vicinity of the incident. The surveillance footage captured portions of the incident and showed, consistent with Officer Decell's BWC footage, a black male wearing a black Nike headband with a white Nike Swoosh emblem, black pants, and a grey shirt approaching the area where Officer Angelucci had fallen, retrieving items from the area, then departing the scene.

11.     Investigators extracted a still image from Officer Decell's BWC footage of the individual that was observed taking the taser and loaded firearm magazines and had it entered into facial recognition software. The software preliminary identified the individual as **DEJUAN RAVENEL**. Investigators then compared images of the individual from the BWC and surveillance footage to known photographs of **RAVENEL**, including booking photographs and South Carolina driver's license photographs, all of which were consistent with the individual observed in the footage. On July 7, 2026, investigators conducted physical surveillance of **RAVENEL** and after personally observing him, they were able to further confirm he was the individual depicted in the BWC footage taking Officer Angelucci's taser and loaded firearm magazines.

12.     During the investigation, NCPD investigators received information from a confidential source that **RAVENEL** was residing at 78 Ashley Hall Plantation Road, Apartment A-93, Charleston, South Carolina. On July 7, 2026, investigators conducted physical surveillance at that location and observed facts consistent with **RAVENEL** residing at the apartment, thereby corroborating the information provided by the source.

13.     On July 7, 2026, based on all the above information, a state arrest warrant was issued for **RAVENEL** for unlawfully taking a firearm from a law enforcement officer and a state search warrant was issued for 78 Ashley Hall Plantation Road, Apartment A-93.

4

14. On July 7, 2026, **RAVENEL** was taken into custody at a restaurant located at 1940 Sam Rittenberg Blvd in Charleston, South Carolina and transported to the Sheriff Al Cannon Detention Center. The following day, **RAVENEL** was issued a $50,000 surety bond. **RAVENEL** remains in custody at the detention center as of the date of this Affidavit.

15. On July 7, 2026, law enforcement executed the search warrant at 78 Ashley Hall Plantation Road, Apartment A-93. During the execution of the search warrant, law enforcement located Officer Angelucci's taser and two loaded firearm magazines under the mattress in a bedroom. Also located in the bedroom was paperwork from South Carolina Probation, Pardon, and Parole Services (SCDPPS) in **RAVENEL's** name, as well as clothing consistent with that of a young male. The only other bedroom in the apartment appeared to belong to **RAVENEL's** mother, who also resided at the apartment.

16. A criminal history review revealed that **RAVENEL** had previously been convicted of a felony offense punishable by imprisonment for a term exceeding one year. Specifically, **RAVENEL** was convicted on February 17, 2026 in the Court of General Sessions, First Judicial Circuit, Dorchester County, South Carolina, of Grand Larceny value $10,000 or more. As a result of that conviction, **RAVENEL** is prohibited from possessing firearms and ammunition pursuant to 18 U.S.C. § 922(g)(1).

17. On July 20, 2026, it was confirmed with SCDPPPS that **RAVENEL** has not received a pardon for his felony conviction. On this same date, SCDPPPS provided a Project Ceasefire form signed by **RAVENEL** on February 17, 2026. This form outlines Title 18 U.S.C. § 922(g), Title 18 U.S.C. § 924(a), and Title 18 U.S.C. § 924(e) violations. Above the signature line, the form states, "I am aware that in view of the above law, I am disqualified from owning or having possession of any firearms, ammunition, or other weapons."

18.    On July 20, 2026, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Special Agent (SA) Bryce Eikenberg examined photographs of the recovered ammunition. SA Eikenberg found the rounds of ammunition bearing the headstamp markings "WIN 45 AUTO +P" were manufactured by Winchester Ammunition. SA Eikenberg determined Winchester does not have manufacturing or production facilities located within South Carolina. Therefore, SA Eikenberg determined the ammunition necessarily traveled in and/or affected interstate or foreign commerce prior to being possessed by **RAVENEL**.

### CONCLUSION

19.    Based on the facts set forth above, I submit that there is probable cause to believe that beginning on or about July 4, 2026 and continuing through July 7, 2026, in the District of South Carolina, **DEJUAN RAVENEL**, having previously been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess ammunition, specifically twenty-six (26) round of .45 caliber ammunition belonging to Officer Angelucci, which had previously been shipped or transported in interstate or foreign commerce, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(8).

This Affidavit has been reviewed by AUSA Carra Henderson.

**{SIGNATURE PAGE TO FOLLOW}**

6



_____
David D. Rivera, Task Force Officer
Federal Bureau of Investigation

SWORN TO ME VIA TELEPHONE OR
OTHER RELIABLE ELECTRONIC MEANS
AND SIGNED BY ME PURSUANT TO
FED. R. CRIM. P. 4.1 AND 4(d) OR 41(d)(3),
AS APPLICABLE.

This ___21___ day of July 2026
Charleston, South Carolina

_____
The Honorable Molly H. Cherry
United States Magistrate Judge

7